## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | | |
|---|---|---|
| RYAN LOCKS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | **CA# 1:22-cv-1242** |
| LIFE INSURANCE COMPANY | ) | |
| OF NORTH AMERICA; | ) | |
| | ) | |
| the UNIVERSAL SERVICES OF | ) | |
| AMERICA, LP HEALTH AND | ) | |
| WELFARE PLAN; | ) | |
| | ) | |
| UNIVERSAL SERVICES OF | ) | |
| AMERICA, LP as Plan Administrator | ) | |
| of the UNIVERSAL SERVICES OF | ) | |
| AMERICA, LP HEALTH AND | ) | |
| WELFARE PLAN; | ) | |
| | ) | |
| TRUST MANAGEMENT SERVICES | ) | |
| as Plan Administrator of the | ) | |
| UNIVERSAL SERVICES OF | ) | |
| AMERICA, LP HEALTH AND | ) | |
| WELFARE PLAN; | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FCE BENEFITS ADMINISTRATORS | ) | |
| INC., as Plan Administrator of the | ) | |
| UNIVERSAL SERVICES OF | ) | |
| AMERICA, LP HEALTH AND | ) | |
| AND WELFARE PLAN; | ) | |
| | ) | |
| **Defendants,** | ) | |
| | ) | |

1

## **COMPLAINT for Voluntary Life Insurance Benefits**

### **JURISDICTION AND VENUE**

1.      Plaintiff's claims against the defendants are filed pursuant to the provisions the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et. seq. (herein "ERISA").

2.      Plaintiff seeks an Order that clarifies a plan beneficiary's rights to benefits under the terms of an employee welfare benefit plan. Specifically, the Plaintiff seeks: (a) a declaration and enforcement of rights under the voluntary life insurance policy at issue and/or the employee benefit plan (which is an "employee welfare benefit plan" as defined by ERISA), (b) the payment of all benefits due with pre-judgment and post-judgment interest; and (c) the enforcement of rights under ERISA 29 U.S.C. § 1132(a)(1)(A), § 1132(a)(1)(B), § 1132(a)(2), § 1132(a)(3), § 1132(c), and § 1132(g), and (d) an award of attorney's fees and costs.

3.      Venue and jurisdiction are proper pursuant to 29 U.S.C. § 1132(f).

### **THE PARTIES**

4.      Ryan Locks is the son of Frederick Locks, deceased.

5.      Ryan Locks is the sole beneficiary of the voluntary life insurance proceeds at issue in this case.

6.      Up until the time of his death on October 8, 2021, Frederick Locks was employed by Universal Services of America, LP ("The Plan Sponsor").

7.      The Universal Services of America, LP Health and Welfare Plan ("the Plan") is an employee welfare benefit plan established under ERISA.

8.      Universal Services of America, LP is the Plan Administrator of the Plan.

9.      Universal Services of America, LP is a company headquartered in Santa Ana, California and is also known as and does business as "Allied Universal" and "Allied Universal Security Services."

10.      In the alternative to Paragraph 8 of this complaint, Trust Management Services is a company that contracted with the Plan Sponsor to act as Plan Administrator of the Plan.

11.      Trust Management Services is a company headquartered in San Jose, California.

12.      In the alternative to Paragraphs 8 and 10 of this complaint, FCE Benefits Administrator, Inc. is a company that contracted with the Plan Sponsor to act as Plan Administrator of the Plan.

13.      FCE Benefits Administrators, Inc. is a company headquartered in San Antonio, Texas.

14.      The Plan Administrator is responsible for the actions of each of its fiduciaries and "deemed fiduciaries."

15.      Life Insurance Corporation of America ("LINA") is a corporation which writes and sells various types of insurance policies, including the group voluntary life insurance policy number FLX 980472 ("The Policy") that is in dispute here.

16.      The Policy became effective with the Employer on January 1, 2020.

17.      The Policy is fully insured by LINA.

**RELATED PROCEEDING**

18.      Ryan Locks filed a Complaint solely against Life Insurance Company of North America ("LINA") on May 18, 2022 in the United States District Court for the Eastern District of Virginia, Alexandria Division.

19.      The aforementioned case was assigned a case number of 1:22-cv-00564.

20.     That case was assigned to District Court Judge Leonie M. Brinkema and Magistrate Judge Theresa Carroll Buchanan on the date the action was commenced.

21.     On August 10, 2022, the case was reassigned to Magistrate Judge Ivan D. Davis and Magistrate Judge Buchanan was no longer assigned to the case.

22.     On October 12, 2022, the parties in that case jointly filed a Notice of Settlement.

23.     That previous case sought for the defendant to produce to plaintiff Ryan Locks a copy of the administrative claim file, which defendant had previously refused to provide to him.

24.     After the commencement of that action and pursuant to the court's scheduling order, the defendant in that case did produce a copy of the claim file, allowing Ryan Locks to proceed with his administrative appeal.

25.     That case did not reach or settle the merits of plaintiff's voluntary life insurance claim, as the plaintiff had not yet exhausted the administrative remedies under the Plan.

## FACTUAL BACKGROUND

26.     As an employee of the Plan Sponsor, Frederick Locks was eligible to become insured, or to increase his coverage under the Policy, during an Annual Open Enrollment.

27.     Frederick Locks enrolled for $170,000 in Voluntary Life Insurance under The Policy to be effective January 1, 2021.

28.     Frederick Locks paid premiums for the increased amount of Voluntary Life Insurance, which were collected by the Plan Sponsor via payroll deduction and forwarded to Life Insurance Company of North America ("LINA").

29.     After the death of Frederick Locks, Ryan Locks made a claim for the Voluntary Life Insurance Benefits under the Policy ("The Claim").

30. The Claim was denied by LINA by letter dated December 7, 2021 ("The Denial Letter").

31. The Denial Letter gave the following reason(s) for denying the Claim:

> The enrollment records show Mr. [Frederick] Locks enrolled for $170,000 Voluntary Life Insurance for the first time during the Annual Open Enrollment to be effective January 1, 2021. Since the Annual Open Enrollment only allows employees currently enrolled to increase coverage without Evidence of Insurability, Mr. Locks would have been required to submit an Evidence of Insurability application and be approved for this coverage. On October 29, 2021 our Medical Underwriting Department confirmed an application was never received or approved for Frederick Locks…Since an application for Evidence of Insurability was never received or approved, the Voluntary Life Insurance never went into effect.

32. On January 7, 2022, in order to begin investigation into the claim, Plaintiff mailed a request for records to LINA. That request, which included a signed authorization, gave pertinent file data such as name and claim number and requested that LINA: "Please provide us with a copy of Lock's entire claim file, including copies of all documents, records, and other information relevant to this claim for benefits."

33. On January 14, 2022, LINA acknowledged receipt of the request and, while providing no documents in response, stated that it would do so in 30 days.

34. Because ERISA imposes a 60-day deadline on appealing the denial of life insurance benefits, Ryan Locks, through counsel, mailed an appeal of the denial of life insurance benefits to LINA on February 9, 2022. That appeal requested that LINA toll the review of the appeal because LINA had not responded fully to the request for documents under ERISA.

35. On February 10, 2022, LINA, responding to an email dated January 31, 2022, (which again requested the claim file documents) "provided an update" on the claim. That "update" reiterated the reasons originally given for the claim denial yet still failed to comply with the document request. That letter also contained standard language under ERISA (but which had not

been included in the initial denial letter) that, "You may request copies of our claim records relevant to the claim determination upon request and free of charge."

36.     On February 22, 2022, counsel for Ryan Locks wrote LINA a letter, this time labeling the letter CLAIM FILE REQUEST – THIRD TRY. That letter again requested the "entire claim file, including copies of all documents, records, and other information relevant to this claim for benefits." The letter cited 29 CFR § 2560.503-1.[1]

37.     On March 2, 2022, in a phone call, LINA responded to the February 22, 2022 letter and that "any request for claim notes, call logs or other confidential information would need to come in the form of a court order" to LINA and that a letter from LINA to that effect would be forthcoming.

38.     On March 31, 2022, LINA confirmed that its response to this ERISA mandated document request would require "a subpoena compelling the release [of] the claim notes and call logs."

---

[1] Specifically, this entire section was included in the letter to LINA:

According to 29 CFR § 2560.503-1, a document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information

(i) Was relied upon in making the benefit determination;
(ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;
(iii) Demonstrates compliance with the administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants.in making the benefit determination; or
(iv) … a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

39.     On August 10, 2022, pursuant to the scheduling order in the aforementioned related case, LINA produced a copy of the claim file to Ryan Locks.

40.     On August 24, 2022, Ryan Locks filed a supplement to his appeal with LINA, which he labeled "Additional Information in Support of the Appeal."

41.     In that August 24th supplement to his appeal, Ryan Locks attached and discussed pages from the claim file LINA had produced in litigation which showed that Frederick Locks fulfilled any requirement to submit Evidence of Insurability as required under the Plan and was affirmatively covered for $170,000 of voluntary life insurance coverage to start 01/01/2021 and asked LINA, therefore, to overturn its adverse benefit termination and pay him the benefits owed as beneficiary of his father's voluntary life insurance policy under the Plan.

42.     ERISA, which governs the group voluntary life policy at issue here, gives sixty (60) days for an administrator to review an appeal of a life insurance determination.

43.     On September 9, 2022, Plaintiff's counsel followed up with LINA by email to LINA employee Renee Haggerty, asking her to confirm that LINA received plaintiff's appeal on August 24, 2022.

44.     On September 12, 2022, Ms. Haggerty replied to counsel's office, saying "I have forward this to our Appeals Team to provide you with a response."

45.     On September 20, 2022, counsel's office called and left a voicemail for LINA's appeal specialist, Ed, asking him to give a status update on Ryan Locks's appeal.

46.     That same day, counsel's office emailed Ms. Haggerty again, saying, "Thanks again for forwarding our appeal to NYL's Appeal Team. I haven't heard back from anyone in the appeals unit. Do you know if they ever received our appeal?"

47.     On September 22, 2022, LINA employee "Mike J." emailed counsel's office and confirmed that LINA received Ryan Locks's appeal, saying, "I was advised that you have not received a response yet on the appeal and wanted to verify that it was received.  Please be advised that the appeal was received and I've attached a letter that was mailed out at that time."

48.     The letter Mike J. attached to the email was dated August 31, 2022 and confirmed that LINA had received Ryan Locks's August 24, 2022 appeal.

49.     That August 31, 2022 letter verified that "[a] final decision will be made no later than 60 days from receipt of your initial request for appeal."

50.     60 days after Ryan Locks's appeal (October 23, 2022), he did not receive any decision from LINA on his appeal.

51.      On or by October 23, 2022, Ryan Locks did not receive any request from LINA for an extension of time to decide the appeal.

52.     On October 25, 2022, Plaintiff's counsel's office called LINA for an update on the appeal and spoke with Mike J.

53.     During that phone call, Mike J. acknowledged that LINA was "at day 63" of its appeal review.

54.     During that phone call, Mike J. said, "It's probably gonna take probably another month or so with what's going on" for the review to be completed.

55.     During that phone call, Mike J. did not identify any special circumstances outside of LINA's control that would warrant an extension of time to review Ryan Locks's appeal.

56.     Following that phone call, Plaintiff's counsel faxed LINA a letter on October 25, 2022, which told LINA that it only had 60 days to decide Mr. Locks's appeal and that those 60 days expired on October 24, 2022.

57.     That letter also said that "Mr. Locks does not consent to any extension of time to decide the appeal" and that if he did not "receive a determination on his appeal by November 1, 2022, he [would] deem his administrative remedies exhausted and [would] proceed accordingly."

58.     LINA has surpassed its deadline to issue a determination on Plaintiff's appeal.

59.     To date, LINA has not issued a determination on Plaintiff's appeal.

60.     Due to the facts alleged supra, Plaintiff's claim is "deemed denied" or "deemed exhausted."

61.     The Plaintiff has exhausted the administrative remedies of the Plan.

**Count I – Claim Against Life Insurance Company of North America for Benefits Due Under the Plan**

62.     Plaintiff incorporates all facts alleged supra and infra into Count I.

63.     Ryan Locks, as beneficiary of his father Frederick Locks's voluntary life insurance benefit under the Plan, is entitled to payment of the voluntary life benefit.

64.     The claim file shows that Frederick Locks fulfilled any requirement to submit Evidence of Insurability as required under the Plan and was affirmatively covered for $170,000 of voluntary life insurance coverage to start 01/01/2021.

65.     Life Insurance Company of North America (LINA) has refused to pay benefits owed under the Plan.

66.     LINA has violated the plain language of the Plan; 29 U.S.C. § 1133 (Claims procedure); and 29 U.S.C. § 1104 (fiduciary duties).

67.     Ryan Locks is entitled to voluntary life benefits under the Plan, including past-due benefits; pre-judgment interest; post-judgment interest and attorney's fees and costs pursuant to ERISA.

68.     Ryan Locks is entitled to these benefits because the benefits are permitted under the policy issued by LINA; Ryan Locks has satisfied all conditions precedent to be eligible to receive the benefits and he has not waived or otherwise relinquished the entitlement to the benefits.

**Count II – Claim Against Life Insurance Company of North America for Breach of Fiduciary Duties**

69.     Plaintiff incorporates all facts alleged supra and infra into Count II.

70.     As a fiduciary under the Plan, LINA owed Frederick Locks and his beneficiary, Ryan Locks, fiduciary duties.

71.     LINA has breached those fiduciary duties by failing to ensure that Frederick Locks properly enrolled in voluntary life coverage under the Plan.

72.     LINA accepted premiums month after month from the Plan Sponsor without investigating to ensure that all employees, including Frederick Locks, for whom premiums were paid were, in fact, covered under the Plan.

73.     LINA has no system in place to ensure that everyone for whom it receives premiums for is actually covered under the Plan.

74.     LINA only investigates to see if a person properly enrolled for voluntary life coverage once a claim has been made, the employee is deceased, and it is too late for the employee to correct any errors or to secure alternate life insurance coverage or make other financial arrangements for their family or other beneficiaries.

75.     In Frederick Locks's case, LINA's failure to do any kind of investigation before his death led LINA to deny his son Ryan's claim for the voluntary life benefit.

76.     By failing to do the above, LINA as fiduciary of the Plan has breached its duties owed to plan participants and plan beneficiaries under the Plan.

77.     As a result of LINA's breach of fiduciary duties, it caused Frederick Locks to lose voluntary life coverage that he was enrolled in and affirmatively covered by and was paying premiums for under the Plan and it caused Ryan Locks to receive a denial of the voluntary life benefit he was guaranteed as beneficiary under the Plan.

78.     LINA has violated the plain language of the Plan; 29 U.S.C. § 1133 (Claims procedure); and 29 U.S.C. § 1104 (fiduciary duties).

79.     Due to LINA's breach of its fiduciary duties, it must remedy its breach and make Ryan Locks whole by paying the voluntary life benefit that Frederick Locks enrolled in and was affirmatively covered by and that would have been paid had LINA not breached its fiduciary duties, including the past-due benefit, pre-judgment interest, post-judgment interest, and attorney fees and costs.

**Count III – Claim Against Universal Services of America, LP Health and Welfare Plan for Benefits Due Under the Plan**

80.     Plaintiff incorporates all facts alleged supra and infra into Count III.

81.     Ryan Locks, as beneficiary of his father Frederick Locks's voluntary life insurance benefit under the Plan, is entitled to payment of the voluntary life benefit.

82.     The claim file shows that Frederick Locks fulfilled any requirement to submit Evidence of Insurability as required under the Plan and was affirmatively covered for $170,000 of voluntary life insurance coverage to start 01/01/2021.

83.     The Plan is responsible for the actions of each of its named fiduciaries and deemed fiduciaries under the Plan.

84.     The Plan's fiduciaries have refused to pay benefits owed under the Plan.

85.     The Plan's fiduciaries have violated the plain language of the Plan; 29 U.S.C. § 1133 (Claims procedure); and 29 U.S.C. § 1104 (fiduciary duties).

86.     Ryan Locks is entitled to voluntary life benefits under the Plan, including past-due benefits; pre-judgment interest; post-judgment interest and attorney's fees and costs pursuant to ERISA.

87.     Ryan Locks is entitled to these benefits because the benefits are permitted under the Plan; Ryan Locks has satisfied all conditions precedent to be eligible to receive the benefits and he has not waived or otherwise relinquished the entitlement to the benefits.

**Count IV – Claim Against Universal Services of America, LP Health and Welfare Plan for Breach of Fiduciary Duties**

88.     Plaintiff incorporates all facts alleged supra and infra into Count IV.

89.     The Plan is responsible for all of its named fiduciaries and deemed fiduciaries.

90.     The Plan owed Frederick Locks and his beneficiary, Ryan Locks, fiduciary duties.

91.     The Plan has breached those fiduciary duties by failing to ensure that Frederick Locks was properly enrolled in voluntary life coverage under the Plan.

92.     When Frederick Locks enrolled for coverage, the Plan's fiduciaries maintained an electronic record of his enrollment showing that he was enrolled in and affirmatively covered for $170,000 of voluntary life coverage effective 01/01/2021, and that an Evidence of Insurability form was not pending or missing or otherwise remarkable in any way.

93.     The Plan's fiduciaries failed to do any review of Frederick Locks's enrollment to ensure he was covered by the voluntary life policy.

94.     The Plan's fiduciaries accepted premiums from Frederick Locks and paid premiums month after month to LINA without investigating to ensure that all employees, including Frederick Locks, for whom premiums were paid were, in fact, covered.

95.     The Plan's fiduciaries have no system in place to ensure that every person for whom they pay premiums or from whom they receive premiums is actually covered by the Plan.

96.     The Plan's fiduciaries only investigate to see if a person is eligible for voluntary life coverage once a claim has been made, the employee has deceased, and it is too late for the employee to correct any errors or to secure alternate life insurance coverage or make other financial arrangements for their family or other beneficiaries.

97.     In Frederick Locks's case, the failures of the Plan fiduciaries to ensure that he was properly enrolled led LINA to deny his son Ryan's claim for the voluntary life benefit.

98.     By failing to do the above, the Plan's fiduciaries have breached their duties owed to plan participants and plan beneficiaries under the Plan.

99.     As a result of the Plan fiduciaries' breach of fiduciary duties, they caused Frederick Locks to lose voluntary life coverage that he was enrolled in and affirmatively covered by and was paying premiums for under the Plan and it caused Ryan Locks to receive a denial of the voluntary life benefit he was guaranteed as beneficiary under the Plan.

100.    The Plan fiduciaries have violated the plain language of the Plan; 29 U.S.C. § 1133 (Claims procedure); and 29 U.S.C. § 1104 (fiduciary duties).

101.    Due to the Plan fiduciaries' breach of their fiduciary duties, the Plan must remedy their breach and make Ryan Locks whole by paying the voluntary life benefit that Frederick Locks enrolled in and was affirmatively covered by and that would have been paid had the Plan

fiduciaries not breached their fiduciary duties, including the past-due benefit, pre-judgment interest, post-judgment interest, and attorney fees and costs.

## Count V – Claim Against Universal Services of America, LP as Plan Administrator for Breach of Fiduciary Duties

102.    Plaintiff incorporates all facts alleged supra and infra into Count V.

103.    As Plan Administrator, Universal Services of America, LP owed Frederick Locks and his beneficiary, Ryan Locks, fiduciary duties.

104.    Universal Services of America has breached those fiduciary duties by failing to ensure that Frederick Locks was properly enrolled in voluntary life coverage under the Plan.

105.    When Frederick Locks enrolled for coverage, the Plan Administrator (Universal Services of America) maintained an electronic record of his enrollment showing that he was enrolled in and affirmatively covered for $170,000 of voluntary life coverage effective 01/01/2021, and that an Evidence of Insurability form was not pending or missing or otherwise remarkable in any way.

106.    The Plan Administrator failed to do any review of Frederick Locks's enrollment to ensure he was covered by the voluntary life policy.

107.    The Plan Administrator accepted premiums from Frederick Locks and paid premiums month after month to LINA without investigating to ensure that all employees for whom premiums were paid were, in fact, covered.

108.    The Plan Administrator has no system in place to ensure that every person for whom they pay premiums or from whom they receive premiums is actually covered by the Plan.

109.    The Plan Administrator never investigates to see if a person is properly enrolled in voluntary life coverage.

110.    In Frederick Locks's case, the Plan Administrator's failure to do any kind of investigation led LINA to deny his son Ryan's claim for the voluntary life benefit.

111.    By failing to do the above, the Plan Administrator as fiduciary of the Plan has breached its duties owed to plan participants and plan beneficiaries under the Plan.

112.    As a result of the Plan Administrator's breach of fiduciary duties, it caused Frederick Locks to lose voluntary life coverage that he was enrolled in and affirmatively covered by and was paying premiums for under the Plan and it caused Ryan Locks to receive a denial of the voluntary life benefit he was guaranteed as beneficiary under the Plan.

113.    The Plan Administrator has violated the plain language of the Plan; 29 U.S.C. § 1133 (Claims procedure); and 29 U.S.C. § 1104 (fiduciary duties).

114.    Due to the Plan Administrator's breach of its fiduciary duties, it must remedy its breach and make Ryan Locks whole by paying the voluntary life benefit that would have been paid had the Plan Administrator not breached its fiduciary duties, including the past-due benefit, pre-judgment interest, post-judgment interest, and attorney fees and costs.

**Count VI – Claim Against Universal Services of America, LP as Plan Administrator for Refusal to Supply Plan Documents**

115.    Plaintiff incorporates all facts alleged supra and infra into Count VI.

116.    On April 6, 2022, Plaintiff's counsel mailed a request to Universal Services of America, LP, care of Trust Management Services, requesting all Plan documents.

117.    On April 13, 2022, Ellen Dorse from Trust Management Services informed Plaintiff's counsel that they would send Plaintiff a copy of the latest Summary Annual Report and the Trust Agreement but that any other plan related documents would need to come from FCE Benefits.

118.    On April 20, 2022, Plaintiff received a copy of the Summary Annual Report and Trust Agreement, but no other plan documents that were requested.

119.    On April 21, 2022, Plaintiff by counsel sent a copy of his April 6, 2022 request for Plan Documents directly to Universal Services of America.

120.    On April 21, 2022, Plaintiff by counsel also sent a copy of his April 6, 2022 request for Plan Documents directly to FCE Benefits.

121.    On April 25, 2022, FCE Benefits mailed a letter to Plaintiff alleging that it did not have any plan documents.

122.    On April 28, 2022, Plaintiff by counsel sent a third request for plan documents to Universal Services of America.

123.    On May 23, 2022, Plaintiff by counsel sent another letter to Universal Services of America, again requesting the plan documents.

124.    On August 10, 2022, Plaintiff by counsel sent an email to Linda Vo, employer representative for Universal Services of America (doing business as "Allied Universal"), whose correspondence with LINA appeared in the claim file that LINA produced to plaintiff in the aforementioned related proceedings.

125.    In that August 10 email to Ms. Vo, Plaintiff's counsel attached a copy of the May 23, 2022 letter to Universal Services of America, in which Plaintiff requested plan documents.

126.    In that August 10 email, Plaintiff's counsel requested that Ms. Vo give assistance in providing the plan documents.

127.    That same day, Ms. Vo replied to the email and said "I forward [sic] this over to the director of Allied for handling. Thank you."

128.     Universal Services of America, LP was or is the Plan Administrator for the Plan and was required to provide all plan documents requested within 30 days.

129.     To date, Universal Services of America, LP has provided no plan documents to Plaintiff.

130.     For each single request, Ryan Locks is owed the statutory penalty of $110 per day, deemed to be continuing until Universal Services, LP provides the plan documents requested.

**Count VII – Claim Against Trust Management Services as Plan Administrator for Breach of Fiduciary Duties**

131.     Plaintiff incorporates all facts alleged supra and infra into Count VII.

132.     As Plan Administrator, Trust Management Services owed Frederick Locks and his beneficiary, Ryan Locks, fiduciary duties.

133.     Trust Management Services has breached those fiduciary duties by failing to ensure that Frederick Locks properly enrolled in voluntary life coverage under the Plan.

134.     The Plan Administrator failed to do any review of Frederick Locks's enrollment to ensure he was covered by the voluntary life policy.

135.     The Plan Administrator withdrew premiums month after month from Frederick Locks's paycheck without investigating to ensure that he was, in fact, covered.

136.     The Plan Administrator has no system in place to ensure that every person for whom they pay premiums or from whom they receive premiums is actually covered by the Plan.

137.     The Plan Administrator never investigates to see if a person is properly enrolled for voluntary life coverage and actually covered by the Plan.

138.     In Frederick Locks's case, the Plan Administrator's failure to do any kind of investigation led LINA to deny his son Ryan's claim for the voluntary life benefit.

139.     By failing to do the above, the Plan Administrator as fiduciary of the Plan has breached its duties owed to plan participants and plan beneficiaries under the Plan.

140.     As a result of the Plan Administrator's breach of fiduciary duties, it caused Frederick Locks to lose voluntary life coverage that he was enrolled in and affirmatively covered by and was paying premiums for under the Plan and it caused Ryan Locks to receive a denial of the voluntary life benefit he was guaranteed as beneficiary under the Plan.

141.     The Plan Administrator has violated the plain language of the Plan; 29 U.S.C. § 1133 (Claims procedure); and 29 U.S.C. § 1104 (fiduciary duties).

142.     Due to the Plan Administrator's breach of its fiduciary duties, it must remedy its breach and make Ryan Locks whole by paying the voluntary life benefit that would have been paid had the Plan Administrator not breached its fiduciary duties, including the past-due benefit, pre-judgment interest, post-judgment interest, and attorney fees and costs.

**Count VIII – Claim against Trust Management Services for Refusal to Supply Plan Documents**

143.     Plaintiff incorporates all facts alleged supra and infra into Count VIII.

144.     On April 6, 2022, Plaintiff's counsel mailed a request to Universal Services of America, LP, care of Trust Management Services, requesting all Plan documents.

145.     On April 13, 2022, Ellen Dorse from Trust Management Services informed Plaintiff's counsel that they would send Plaintiff a copy of the latest Summary Annual Report and the Trust Agreement but that any other plan related documents would need to come from FCE Benefits.

146.    On April 20, 2022, Plaintiff received a copy of the Summary Annual Report and Trust Agreement, but no other plan documents that were requested.

147.    On April 21, 2022, Plaintiff by counsel sent a copy of his April 6, 2022 request for Plan Documents directly to Universal Services of America.

148.    On April 21, 2022, Plaintiff by counsel also sent a copy of his April 6, 2022 request for Plan Documents directly to FCE Benefits.

149.    On April 25, 2022, FCE Benefits mailed a letter to Plaintiff alleging that it did not have any plan documents.

150.    On April 28, 2022, Plaintiff by counsel sent a third request for plan documents to Universal Services of America.

151.    On May 23, 2022, Plaintiff by counsel sent another letter to Universal Services of America, requesting the plan documents.

152.    On August 10, 2022, Plaintiff by counsel sent an email to Linda Vo, an employee of Universal Services of America (doing business as "Allied Universal"), whose correspondence with LINA appeared in the claim file that LINA produced to plaintiff in the aforementioned related proceedings.

153.    In that August 10 email to Ms. Vo, Plaintiff's counsel attached a copy of the May 23, 2022 letter to Universal Services of America, in which Plaintiff requested plan documents.

154.    In that August 10 email, Plaintiff's counsel requested that Ms. Vo give assistance in providing the plan documents.

155.    That same day, Ms. Vo replied to the email and said "I forward [sic] this over to the director of Allied for handling. Thank you."

156.    Trust Management Services was or is the Plan Administrator for the Plan and was required to provide all plan documents requested within 30 days.

157.    To date, Trust Management Services has not provided all of the requested plan documents.

158.    For each single request, Ryan Locks is owed the statutory penalty of $110 per day, deemed to be continuing until Trust Management Services provides the remaining plan documents requested.

## Count IX – Claim Against FCE Benefits Administrators, Inc. as Plan Administrator for Breach of Fiduciary Duties

159.    Plaintiff incorporates all facts alleged supra and infra into Count IX.

160.    As Plan Administrator, FCE Benefits Administrators, Inc. ("FCE Benefits") owed Frederick Locks and his beneficiary, Ryan Locks, fiduciary duties.

161.    FCE Benefits has breached those fiduciary duties by failing to ensure that Frederick Locks properly enrolled in voluntary life coverage under the Plan.

162.    When Frederick Locks enrolled for coverage, the Plan Administrator (FCE Benefits) failed to send him an Evidence of Insurability form.

163.    The Plan Administrator failed to do any review of Frederick Locks's enrollment to ensure he was eligible to be covered by the voluntary life policy.

164.    The Plan Administrator withdrew premiums month after month from Frederick Locks's paycheck without investigating to ensure that he was, in fact, covered and eligible for coverage.

165.    The Plan Administrator has no system in place to ensure that everyone for whom it withdraws and pays premiums for is actually eligible for coverage.

166.    The Plan Administrator never investigates to see if a person is eligible for voluntary life coverage.

167.    In Frederick Locks's case, the Plan Administrator's failure to do any kind of investigation led LINA to deny his son Ryan's claim for the voluntary life benefit.

168.    By failing to do the above, the Plan Administrator as fiduciary of the Plan has breached its duties owed to plan participants and plan beneficiaries under the Plan.

169.    As a result of the Plan Administrator's breach of fiduciary duties, it caused Frederick Locks to lose voluntary life coverage that he was enrolled in and affirmatively covered by and was paying premiums for under the Plan and it caused Ryan Locks to receive a denial of the voluntary life benefit he was guaranteed as beneficiary under the Plan.

170.    The Plan Administrator has violated the plain language of the Plan; 29 U.S.C. § 1133 (Claims procedure); and 29 U.S.C. § 1104 (fiduciary duties).

171.    Due to the Plan Administrator's breach of its fiduciary duties, it must remedy its breach and make Ryan Locks whole by paying the voluntary life benefit that would have been paid had the Plan Administrator not breached its fiduciary duties, including the past-due benefit, pre-judgment interest, post-judgment interest, and attorney fees and costs.

## Count X – Claim Against FCE Benefits Administrators, Inc. as Plan Administrator for Refusal to Supply Plan Documents

172.    Plaintiff incorporates all facts alleged supra and infra into Count X.

173.    On April 6, 2022, Plaintiff's counsel mailed a request to Universal Services of America, LP, care of Trust Management Services, requesting all Plan documents.

174.    On April 13, 2022, Ellen Dorse from Trust Management Services informed Plaintiff's counsel that they would send Plaintiff a copy of the latest Summary Annual Report

and the Trust Agreement but that any other plan related documents would need to come from FCE Benefits.

175.    On April 20, 2022, Plaintiff received a copy of the Summary Annual Report and Trust Agreement, but no other plan documents that were requested.

176.    On April 21, 2022, Plaintiff by counsel sent a copy of his April 6, 2022 request for Plan Documents directly to Universal Services of America.

177.    On April 21, 2022, Plaintiff by counsel also sent a copy of his April 6, 2022 request for Plan Documents directly to FCE Benefits.

178.    On April 25, 2022, FCE Benefits mailed a letter to Plaintiff alleging that it did not have any plan documents.

179.    On April 28, 2022, Plaintiff by counsel sent a third request for plan documents to Universal Services of America.

180.    On May 23, 2022, Plaintiff by counsel sent another letter to Universal Services of America, requesting the plan documents.

181.    On August 10, 2022, Plaintiff by counsel sent an email to Linda Vo, an employee of Universal Services of America (doing business as "Allied Universal"), whose correspondence with LINA appeared in the claim file that LINA produced to plaintiff in the aforementioned related proceedings.

182.    In that August 10 email to Ms. Vo, Plaintiff's counsel attached a copy of the May 23, 2022 letter to Universal Services of America, in which Plaintiff requested plan documents.

183.    In that August 10 email, Plaintiff's counsel requested that Ms. Vo give assistance in providing the plan documents.

184.    That same day, Ms. Vo replied to the email and said "I forward [sic] this over to the director of Allied for handling. Thank you."

185.    FCE Benefits Administrators, Inc. ("FCE Benefits") was or is the Plan Administrator for the Plan and was required to provide all plan documents requested within 30 days.

186.    To date, FCE Benefits has provided no plan documents to Plaintiff.

187.    For each single request, Ryan Locks is owed the statutory penalty of $110 per day, deemed to be continuing until FCE Benefits provides the plan documents requested.

## RELIEF SOUGHT

The Plaintiff requests that this Court enter an Order declaring the following:

1.    No deference be granted to the decision of the Defendants to deny benefits.

2.    That the Plaintiff is entitled to voluntary life benefits under the Plan.

3.    That the Plaintiff is entitled to statutory damages of $110 per day for each and every request he sent to the Plan Administrator for failure to provide plan documents.

4.    That the Plaintiff is entitled to payment of pre- and post-judgment interest.

5.    That the Plaintiff is entitled to payment of attorney's fees and costs.

Respectfully submitted,

*Ryan Locks*
By Counsel

_____  /s/  _____

Benjamin W. Glass, III | VSB #23152
Benjamin W. Glass, III & Assoc., PC
3998 Fair Ridge Drive, #250
Fairfax, VA 22033
703-591-9829 phone | 703-783-0686 fax
Ben@BenGlassLaw.com
*Counsel for Plaintiff*

23